## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  SEILING MUNICIPAL HOSPITAL AUTHORITY, | ) ) ) ) |
| Plaintiff, | ) ) | Case No. CIV-16-1143-D |
| 1. CAH ACQUISITION COMPANY 9, LLC, 2. HMC/CAH CONSOLIDATED, INC., and 3. RURAL COMMUNITY HOSPITALS OF AMERICA, LLC | ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

The Plaintiff, Seiling Municipal Hospital Authority (the "Plaintiff"), for its Complaint against Defendants CAH Acquisition Company 9, LLC ("CAH"), HMC/CAH Consolidated, Inc. ("HMC"), and Rural Community Hospitals of America, LLC (RCHA") alleges and states as follows.

## PARTIES

1.    Seiling Municipal Hospital Authority ("SMHA") is an Oklahoma public trust, created pursuant to 60 Okla. Stat. § 176 *et seq*. SMHA owns and operates Seiling Municipal Hospital ("the Hospital") located in Seiling, Oklahoma.

2.    Defendant CAH is a Delaware limited liability company. Upon information and belief, the sole member of CAH is HMC.  CAH entered into an Asset Purchase

1

Agreement with SMHA for the sale of the facility currently known as the Seiling Municipal Hospital (the "Hospital") located in the town of Seiling, Oklahoma.

3.      HMC is a Delaware corporation with its principal place of business in Kansas City, Missouri and is the sole member of CAH.  Upon information and belief, HMC owns, controls, and operates CAH.

4.      RCHA is a West Virginia limited liability.  Upon information and belief, RCHA is also controlled and/or owned by HMC.  During the relevant period of time, RCHA was under contract with CAH to operate the Hospital on behalf of CAH.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a). This suit is between citizens of different states. Plaintiff SMHA is an Oklahoma public trust, whose beneficiary is the Town of Seiling, Oklahoma, and is therefore a citizen of the State of Oklahoma. Defendant HMC is a Delaware corporation with its principal place of business in Kansas City, Missouri. Defendant CAH is a Delaware limited liability company with its principal place of business in Kansas City, Missouri and whose sole member is HMC.  Defendant RCHA is a West Virginia limited liability company who is also controlled and/or owned by HMC. The amount in controversy exceeds $75,000, exclusive of interest and costs, as is discussed more fully below.

6.      This court has personal jurisdiction over HMC, CAH, and RCHA.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

2

## FACTUAL BACKGROUND

8.      SMHA is an Oklahoma public trust, created pursuant to 60 Okla. Stat. § 176 *et seq*. Prior to July 1, 2009, SMHA owned and operated the Hospital as Seiling Municipal Hospital.

The Asset Purchase Agreement

9.      On or about July 1, 2009, CAH leased the Hospital from the Town of Seiling, purchased all assets used in the operation of the Hospital from SMHA, and began operating the Hospital as Seiling Community Hospital.

10.     From July 1, 2009, through September 30, 2014, the Hospital license was issued to CAH, and CAH owned and operated the Hospital.

11.     On or about September 30, 2014 (the "Closing Date"), SMHA and CAH executed an Asset Purchase Agreement ("the Agreement"), in which SMHA repurchased the Hospital assets from CAH and returned the name of the Hospital to Seiling Municipal Hospital. *See* **Relevant Excerpts of Agreement attached hereto as Exhibit 1.**

12.     Pursuant to Section 4(b) of the Agreement, SMHA expressly did not assume and the parties agreed that SMHA would not be obligated to pay the obligations or liabilities of CAH including but not limited to the following:

> (i)      Any and all accounts payable, tax liabilities debt and other obligations with respect to the operation of the Hospital and the ownership of the Assets or the Land for periods prior to the Closing;
>
> (ii)     Any liabilities or obligations arising out of any breach by Seller prior to the Closing or any lease or contract, or liabilities or obligations arising as a result of any breach by Seller at any time;

(iii)    Any liability arising out of or in connection with claims for alleged acts or omissions relating to the operation of the Hospital or the ownership of the Assets or Land that occurred prior to the Closing including, by way of description and not limitation, liabilities relating to professional malpractice claims and any other general liability claims;

(iv)    Any liability for any and all claims by or on behalf of employees of Seller relating to periods prior to the Closing including, not limitation, liability for or arising out of Seller's Plans;

(v)    Any liability for any EEOC claim, wage and hour claim, unemployment compensation claim or workers' compensation claim, and liability for all employee wages and benefits, severance pay and related taxes, accrued PTO or other liability related thereto in respect of employees of Seller and/or employees or contractors providing services to the Hospital prior to Closing;

(vi)    Any debt, obligation, expense or liability of Seller arising out of or incurred solely as a result of any transaction of Seller occurring after the Closing or for any violation by Seller of any law, regulation or ordinance at any time;

(vii)    Any claims or liability under any environmental law arising before or after the Effective Date, but relating to the prior presence of, prior discharge of, or prior release in or on the Hospital relating to those substances, pollutants, contaminants, materials, and wastes listed by the United States Department of Transportation or by the Environmental Protection Agency as hazardous substances, located on, in or under the Hospital between July 1, 2009 and the Effective Date; and

(viii)    Any other debt, obligation, expense or liability of Seller.

*See* **Agreement at §4(b)(i-viii).**

4

13.     Additionally, pursuant to Section 13 of the Agreement, CAH remained responsible for any recoupments based on previous overpayments on cost reports and other claims for Hospital operations up to the Closing Date.   Conversely, CAH was further required to remit any refunds for previous underpayments on cost reports and other claims for Hospital operations for all periods on or after the Closing Date.   ***See Agreement at §13(a-c).***

14.     Furthermore, the Agreement provided:

> If [CAH] comes into possession or control of any payments relating to services provided by [SMHA] during the Interim Period, it shall immediately remit such amounts to [SMHA]. In the event CMS withholds any amounts due from [CAH] to CMS from payments made by CMS for services provided by [SMHA] to Governmental Program Beneficiaries during the Interim Period and thereafter, [CAH] will pay to [SMHA] such amounts withheld by CMS within seven (7) days following the date of any such withhold by CMS.   This provision shall survive the Closing Date indefinitely.

**See Agreement at § 17.**

<u>HMC, CAH, and RCHA as Alter Egos and Mere Instrumentalities</u>

15.     Upon information and belief, CAH, HMC, and RCHA are interrelated companies that operate in concert as a single entity.   Furthermore, HMC has exercised dominion and control over defendants CAH and RCHA such that CAH and RCHA were but mere instrumentalities and alter egos of HMC.   The principals of HMC utilized the corporate form of CAH and RCHA to obtain contracts and reap the benefits thereunder but avoid liability for the breach of the obligations under such contracts.

16.    The interrelatedness of HMC, CAH, and RCHA is evidenced by the following:

    a.  HMC is the sole member and manager of CAH;

    b.  Representatives of HMC and/or RCHA primarily handled the negotiations of the Agreement with SMHA.  There was no designated representative acting or negotiating exclusively on behalf of CAH during  the negotiation of the Agreement;

    c.  Third party contracts for services provided to the Hospital were executed inconsistently, with some contracts bearing a signature block of "Tim Parker, Interim Hospital CEO, on behalf of RURAL COMMUNITY HOSPITALS OF AMERICA, LLC, authorized agent of Hospital" and others bearing a signature block of "Tim Parker, CEO, CAH Acquisition Company 9, LLC d/b/a Seiling Community Hospital;

    **d.**  HMC's website describes its business as specializing in the management, operation, strategic and financial planning, and new service development for inpatient and outpatient healthcare providers."  *See* **Home Page of http://hmccah.dreamhosters.com accessed on 5/4/2015 attached hereto as Exhibit 2.**

    e.  HMC's website home page also lists the following contact information:

    1100 Main, Suite 2350,
    Kansas City, MO 64105

Tel: 816-747-7800
Fax: 816-474-2203

*Id.*

f.   RCHA's website similarly describes itself as "an industry leading operating company for the purpose of managing and operating small rural hospitals, both public and private, Critical Access Hospitals and small rural PPS hospitals." ***See* Home Page of ghttp://RCHAmerica.com/home accessed on 9/4/2015 attached hereto as Exhibit 3.**

g.   Indeed, RCHA's website home page includes a quote attributed to its CEO, Larry Arthur who also serves as the president and CEO of HMC. *Id.*

h.   RCHA's home page also lists the following contact information which is identical to that of HMC:

1100 Main, Suite 2350,
Kansas City, MO 64105
Tel: 816-747-7800
Fax: 816-474-2203

*Id.*

i.   Additionally, during its period of operating the Hospital, CAH contracted with RCHA to operate the Hospital on its behalf.

j.   RCHA has expressly stated in communications with SMHA that it is the "authorized agent of CAH".

k. Upon information and  belief, HMC derived financial benefit from CAH and RCHA's operation of the Hospital;

l. HMC caused CAH and/or RCHA to execute contracts under the names of CAH and/or RCHA so that it could obtain the benefits of such contracts but avoid the obligations and associated liabilities under such contracts;

m. Upon information and belief, CAH executives, officer, and/or agents are also the same current and/or former executives, officers, or agents of HMC.

n. Upon information and belief, RCHA executives, officer, and/or agents are also the same current and/or former executives, officers, or agents of HMC.

17.    The corporate structure and relationship between the Defendants evidence that HMC, CAH, and RCHA were actually acting as a collective and single entity to accomplish the same purposes of managing and operating the Hospital.

18.    Upon information and belief, this corporate form, directed and controlled by HMC, was used intentionally to avoid statutory and contractual duties and avoid liability for the violations of the Agreement as described herein.

Failure to Reimburse Amounts Recouped from SMHA due to Prior Overpayments to CAH

19.    Under the terms of the Agreement, CAH, as operated by RCHA and under the control and direction of HMC,  agreed to pay amounts and other demands for

8

overpayment on cost reports and other claims for all periods prior to the Closing Date. *See* **Agreement at § 13(b).** On numerous occasions, however, amounts were withheld from payments to SMHA by Medicare, Medicaid, and Humana due to cost report adjustments which relate to amounts previously paid to CAH and/or RCHA or HMC. CAH, as operated by RCHA and under the control and direction of HMC, breached the terms of the Agreement by refusing to refund SMHA for these amounts which were withheld, in the amount of **$129,769.01** as follows:

| | | |
|---|---|---|
| 2/10/2015 | Medicare payback for cost report | $5,785.84 |
| 2/10/2015 | Medicare payback for cost report | $82.85 |
| 9/2/2015 | Medicaid Recoup for CAH patient ending in 1667 | $2,572.95 |
| 9/2/2015 | Medicaid Recoup for CAH patient ending in 1883 | $2,791.18 |
| 9/2/2015 | Medicaid Recoup for CAH patient ending in 4826 | $7,224.49 |
| 9/14/2015 | Medicare HMC cost report withholding 2013 | $4,866.00 |
| 9/23/2015 | Medicare HMC cost report withholding 2014 | $174.29 |
| 9/23/2015 | Medicare HMC cost report withholding 2014 | $652.15 |
| 9/23/2015 | Medicare HMC cost report withholding 2014 | $29,143.20 |
| 10/13/2015 | Humana held overpayment for account ending in 9125 | $111.15 |
| 06/03/2016 | Medicare HMC cost report withholding 2012 | $76,364.91 |

**TOTAL:** **$129,769.01**

<u>Failure to Remit Refunds for Previous Underpayments under Cost Reports Settlements to SMHA</u>

20.    Under the terms of the Agreement, SMHA is entitled to receive and retain any refund or other benefit for underpayments paid under cost report settlements for all periods after the Closing Date. *See* **Agreement at §§ 13(b) and 17.** On numerous occasions, however, CAH and/or RCHA or HMC received and retained amounts paid to it by Medicaid for underpayments paid under cost report settlements related to claims submitted by SMHA which occurred after the Closing Date. CAH, as operated by RCHA

9

and under the control and direction of HMC, breached the terms of the Agreement by receiving and retaining these payments, in the amount of $**19,922.46** as follows:

|           |             |
|-----------|-------------|
| 11/26/2014 | $4,882.40  |
| 8/12/2015  | $3,232.40  |
| 8/12/2015  | $685.02    |
| 8/26/2015  | $4,343.80  |
| 8/26/2015  | $107.10    |
| 8/26/2015  | $333.38    |
| 9/2/2015   | $646.39    |
| 9/2/2015   | $5,454.07  |
| 9/9/2015   | $237.90    |
| **TOTAL:** | **$19,922.46** |

Failure to Pay Liabilities Arising Prior to Closing Date

21.     Under the terms of the Agreement, CAH, as operated by RCHA and under the control and direction of HMC, agreed to be responsible for the debt, obligations, expenses, and liabilities of CAH which arose prior to the Closing Date, September 30, 2014. *See* **Agreement at §§ 4(b), 13(c), and 17.**  However, the Centers for Medicare and Medicaid Services ("CMS") have and continue to withhold funds from payments to SMHA on account of a loan given to CAH and/or RCHA or HMC by Medicaid related to recoupment of overpayments for CAH's 2011 cost report prior to the Closing Date (the "CAH Loan"). CAH, under the operation and control of RCHA and HMC, has breached the terms of the Agreement by refusing to reimburse SMHA for these amounts which were and which continue to be withheld on account of the CAH Loan, in the amount of $294,893.00 plus interest as charged by CMS in accordance with 42 C.F.R. 405.378.

22.     Furthermore, on multiple occasions, amounts were withheld from payments to SMHA by CAH, as operated by RCHA and under the control and direction of HMC, for repayment of amounts owed by CAH related to a bone density scanner which was leased by CAH, as operated by RCHA and under the control and direction of HMC, under an agreement entered into by CAH with General Electric prior to the Closing Date. CAH, as operated by RCHA and under the control and direction of HMC, breached the terms of the Agreement by withholding these payments from SMHA, in the amount of 9,038.40 as follows:

| | |
|---|---|
| 6/2/2015 | $7,663.63 |
| 6/16/2015 | $1,374.77 |
| **Total:** | **$9,038.40** |

23.     On or about June 14, 2016, SMHA sent written notice to CHA, through RCHA as authorized agent for CAH, of amounts owed by CAH to SMHA. Despite this, CAH has failed to make the payments and reimbursements that are due and owing under the Agreement to SMHA.

<u>SMHA's Recoupment and Setoff of Amounts Received by SMHA Against Amounts Owed by Defendants</u>

24.     On or about August 1, 2016, SMHA received $152,729.00 (the "Recouped Funds") from CMS on account of refunds related to the cost report for 2014 and has offset the Recouped Funds against the amounts outstanding by CAH to SMHA.

## CAUSE OF ACTION

For its cause of action against Defendants, Plaintiff alleges and states as follows:

## COUNT I - BREACH OF CONTRACT

25.     Plaintiff re-alleges and re-incorporates by reference all of the allegations set forth in paragraphs 1 thorough 24 above.

26.     The Agreement expressly states that CAH, as operated by RCHA and under the control and direction of HMC, is responsible for the debt, obligations, expenses, and liabilities of CAH which arose prior to the Closing Date. Additionally, CAH under the operation and control of RCHA and HMC, agreed to pay amounts and other demands for overpayments on cost reports and other claims for all periods prior to the Closing Date. Furthermore, the Agreement states that SMHA is entitled to receive and retain and CAH is obligated to pay over all amounts paid related to underpayments under cost report settlements for all periods after the Closing Date.

27.     CAH, under the operation and control of RCHA and HMC, has breached the Agreement by failing to pay the amounts due thereunder and by retaining amounts which are properly due to SMHA.

28.     Accordingly, SMHA is entitled to judgment in its favor and against Defendants, jointly and severally, for damages in the amount of $447,754.18 less the Recouped Funds in the amount of $152,729.00, for a total of $295,025.18 including interest accrued and accruing, plus costs, including reasonable attorneys' fees.

**WHEREFORE**, Plaintiff SMHA respectfully requests this Court to award judgment in favor of SMHA and against Defendants, jointly and severally, for the damages prayed for above, including:

A.      Damages in the amount of $295,025.18 together with interest accrued and accruing thereon;

B.      Plaintiff attorneys' fees and costs; and

C.      All other legal and equitable relief to which Plaintiff may be entitled.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

s/Judy Hamilton Morse
Judy Hamilton Morse, OBA # 6098
Lysbeth L. George, OBA # 30562
-Of the Firm-
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Ave.
Suite 100
Oklahoma City, OK 73102-8273
(405) 234-3245
(405) 272-5203 (Facsimile)

**ATTORNEY FOR PLAINTIFF**

3069824.2